Argued and submitted April 27, 1994, reversed and remanded April 26, 1995

Siyavash ESLAMIZAR,
dba Great Grinder Shop,
*Appellant,*

*v.*

AMERICAN STATES INSURANCE COMPANY,
an Indiana corporation,
*Respondent.*

(C910651CV; CA A78747)

894 P2d 1195

Thomas W. Kohl argued the cause for appellant. With him on the briefs was Frost & Kohl.

Darleen Darnall argued the cause for respondent. With her on the brief were Lisa E. Lear and Bullivant, Houser, Bailey, Pendergrass & Hoffman.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff appeals from a judgment entered upon a jury verdict in favor of defendant, assigning error to the trial court's failure to grant plaintiff's motion for a directed verdict on defendant's affirmative defenses and to the form of verdict submitted to the jury. We reverse and remand.

■ We view the facts in the light most favorable to defendant and extend to defendant the benefit of every reasonable inference that may be drawn from the evidence. *Shockey v. City of Portland*, 313 Or 414, 422, 837 P2d 505 (1992), *cert den* ___ US ___, 113 S Ct 1813, 123 L Ed 2d 444 (1993).

Plaintiff owned a restaurant, which he had insured under a fire policy he purchased from defendant. Defendant's policy contained the following provisions:

"1.   Subject to paragraphs 2 and 3 below, this entire Coverage Part or Coverage Form will be void if, whether before or after a loss, you have willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject of it, or your interest in it, or in case of any fraud or false swearing by you relating to it.

"* * * * *

"3.   In order to use any representation made by you or on your behalf in defense of a claim under the Coverage Part or Coverage Form, we must show that the representations are material and that we relied on them."

When plaintiff's restaurant was destroyed by fire, plaintiff notified defendant and submitted a proof of loss form. Local police investigated the fire and concluded that plaintiff, or someone acting at plaintiff's direction, had set the fire. Defendant conducted its own investigation of the fire as well. In the course of that investigation, plaintiff testified under oath that he knew nothing of insurance matters, and that, upon consultation with a real estate broker, he estimated the value of the restaurant at $90,000. Further inquiry by defendant, however, established that plaintiff had substantial prior experience in the insurance industry, and that he had, in fact, run an insurance company in another country. Defendant's investigation also showed that plaintiff never consulted with a real estate broker about the value of the

restaurant, and that it was probably worth substantially less than $90,000. In addition, defendant learned that plaintiff had told an acquaintance that he had inflated an earlier burglary claim at the restaurant and recovered more than was actually stolen. Finally, defendant learned that, shortly before the fire, plaintiff had told another acquaintance that the restaurant was doing poorly and that, if he could not sell it he would "burn the S.O.B." According to the acquaintance, plaintiff said that he did not mention the conversation to defendant because he did not want defendant to become suspicious.

On the basis of the results of the investigation, defendant denied plaintiff's claim. Plaintiff initiated this action for breach of contract. Defendant answered, raising affirmative defenses of arson and misrepresentation. Defendant alleged that the latter defense was based on plaintiff's material misstatements about his real estate broker's valuation of the restaurant and about his lack of any knowledge about insurance, on his concealment of his prior involvement in filing inflated and fraudulent claims, and on his concealment of his prior statements about the real cause of the fire and of the identity and locations of witnesses to those statements.

At trial, plaintiff moved for a directed verdict on the affirmative defenses. The trial court denied the motion and submitted the case to a jury on a general verdict form. The jury returned a verdict in favor of defendant, and plaintiff appeals.

Plaintiff assigns error to the trial court's denial of the motion for a directed verdict as to the affirmative defense of misrepresentation. Plaintiff argues that, under the terms of defendant's policy and the statute on which it is based, misrepresentations may defeat a claim for coverage only upon proof that plaintiff's representations were material and that defendant relied on them. According to plaintiff, there is no evidence of either materiality or reliance. Because of the nature of the general verdict, plaintiff concludes, we cannot tell whether the jury rendered its verdict on the arson defense — the validity of which plaintiff does not challenge — or the misrepresentation defense, and the judgment must be reversed.

Defendant argues that the evidence shows that plaintiff's misrepresentations and efforts to conceal information were plainly material. Defendant further argues that, under *Hendricksen v. Home Ins. Co.*, 237 Or 539, 392 P2d 324 (1964), and *Callaway v. Sublimity Ins. Co.*, 123 Or App 18, 858 P2d 888 (1993), insurers are not required to establish reliance upon misrepresentations to defeat a claim.

We do not address the parties' arguments concerning materiality, because, even if plaintiff's statements were material, proof of reliance is required, and there is no evidence that defendant relied on those statements.

The language of the policy states:

"In order to use any representation made by you * * * we must show that the representations are material and that we relied on them."

That language is based on, and essentially repeats, ORS 742.208(3), which requires all fire insurance policies to contain a provision that:

"In order to use any representation by or on behalf of the insured in defense of a claim under the policy, the insurer must show that the representations are material and that the insurer relied on them."

When policy language matches the requirements of the statute, we approach the issue of the interpretation of the policy as a matter of statutory construction. *Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 299, 613 P2d 32 (1980). In construing ORS 742.208(3), our task is to discern the intention of the legislature. Our first and primary source of evidence of the legislature's intent is the text of the statute, viewed in context. If the legislature's intentions are plainly revealed in the text in context, then we proceed no further in our analysis. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

In this case, the language of the statute is plain on its face. It says that, to rely on misrepresentations to defeat a claim, the insurer "must show * * * that the insurer relied on them." There is no room for construction. The statute requires proof of reliance.

■   Defendant's only argument to the contrary is that, in two decisions, the statute has previously been construed to require no such reliance. Defendant is mistaken. The first decision on which defendant relies, *Hendricksen*, construed an earlier version of the statute, one which did not contain the reference to reliance that the current version of the statute does. The second decision on which defendant relies, *Callaway*, involved a claim on a property damage policy, not a fire insurance policy. In that context, we said that

> "an insurance company need not prove that it relied on or sustained pecuniary injury as a result of the insured's misrepresentations."

*Callaway*, 123 Or App at 20 n 1. In saying that, however, we were not construing ORS 742.208(3). That statute, which applies only to fire insurance policies, did not apply in that case.[1] We conclude, therefore, that defendant must prove reliance on plaintiff's misrepresentations in order to prevail on its affirmative defense under ORS 742.208(3).

■   Ordinarily, to show reliance there must be evidence that one has acted or refrained from acting to his or her detriment. *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 405, 737 P2d 595 (1987); *Crawford v. Standard Insurance Co.*, 49 Or App 731, 735-36, 621 P2d 583 (1980), *rev den* 290 Or 652 (1981). We are aware that, in cases such as this in which the insurer has denied coverage, it may be difficult for the insurer to establish that it has acted to its detriment or refrained from acting to its detriment. By denying coverage, the insurer has avoided the detriment.[2] Nevertheless, the language of the statute gives no indication that the legislature intended the term "reliance" to mean anything other than what it ordinarily means as an element of a common law fraud claim.

Even assuming, for the sake of argument, that the reference to "reliance" in ORS 742.208(3) is ambiguous, the

---

[1] In *Callaway v. Sublimity Ins. Co.*, 123 Or App 18, 20 n 1, 858 P2d 888 (1993), we cited to *Hendricksen v. Home Ins. Co.*, 237 Or 539, 392 P2d 324 (1964), which did involve the fire insurance statute. Because that statute was not involved in *Callaway*, our citation to *Hendricksen* was not appropriate. Nevertheless, *Callaway* was correctly decided and is of no assistance to defendant in this case.

[2] We are not the first to note that difficulty. *See Insurance* § 22.1 (OSB CLE 1992 Supp).

legislative history demonstrates that the legislature intended nothing other than what is ordinarily meant by the term. The legislature originally enacted what is now ORS 742.208(3) in 1967. The text of the law then read:

"A fire insurance policy shall contain a provision as follows: 'This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.' "

Or Laws 1967, ch 359, § 483. The law as then drafted did not expressly require an insurer to establish reliance on misrepresentations of an insured as a condition of voiding the policy on the basis of those misrepresentations. Several court decisions read similar language in statutory provisions relating to other forms of insurance to require proof of reliance, as in the case of common law fraud claims. *Kubeck v. Consolidated Underwriters*, 267 Or 548, 554-55, 517 P2d 1039 (1974); *Crawford*, 49 Or App at 735-36. Other decisions, however, reached the opposite conclusion with respect to the fire insurance policy statute. *Kentner v. Gulf Ins. Co.*, 66 Or App 15, 24, 673 P2d 1354 (1983), *aff'd* 297 Or 470, 686 P2d 339, *modified on rehearing* 298 Or 69, 689 P2d 955 (1984); *Transamerica v. Bloomfield*, 55 Or App 31, 34-38, 637 P2d 176 (1981).

In 1985 the legislature amended the statute as follows:

"A fire insurance policy shall contain [*a provision as follows:*] **the following provisions:**

**"(1) Subject to subsections (2) and (3) of this section,** this entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

**"(2) All statements made by or on behalf of the insured, in the absence of fraud, shall be deemed representations and not warranties. No such statements that arise from an error in the application shall be used in defense of a claim under the policy unless:**

**"(a)   The statements are contained in a written application; and**

**"(b)   A copy of the application is indorsed upon or attached to the policy when issued.**

**"(3)   In order to use any representation by or on behalf of the insured in defense of a claim under the policy, the insurer must show that the representations are material and that the insurer relied on them."**

Or Laws 1985, ch 465, § 3. (Boldface, brackets and emphasis in original.) Among other things, the purpose of the amendment was to clear up the conflict in the cases on the issue of whether proof of reliance is required to void a policy on the basis of an insured's fraud.[3] The legislature intended to side with the cases requiring proof of ordinary reliance. Nowhere in the legislative history is there any discussion of the meaning of the term "reliance," much less any indication that the

---

[3] We note that the legislative history also suggests that the purpose of the amendments may have been to bring the fire insurance law in line with statutes governing property and casualty policies and life insurance policies concerning fraud in *applications* for insurance, not fraud in filing *claims*. The transcripts of the hearings contain a number of statements by witnesses and legislators that the amendments were intended to limit an insurer's use of an insured's misrepresentations in applying for insurance, by requiring that the misrepresentations be contained in a written application that is attached to the policy when issued and that the insurer show both that the misrepresentations were material and that it relied on them. There is also testimony from one of the proponents of the legislation that the bill containing the amendments concerns only "application error" and "[i]t does not in any respect affect arson, excessive or fraudulent claims." Testimony, House Committee on Consumer and Business Affairs, HB 2787, May 30, 1985, Ex D.

The legislative history, however, also evinces an intention to overrule *Kentner v. Gulf Ins. Co.*, 66 Or App 15, 24, 673 P2d 1354 (1983), *aff'd* 297 Or 470, 686 P2d 339 (1984), and *Transamerica v. Bloomfield*, 55 Or App 31, 637 P2d 176 (1981), both of which involved the filing of fraudulent claims and misrepresentations as to the amounts of loss, not merely the filing of insurance applications containing misrepresentations.

Whatever the legislative history reveals, we are constrained to give effect to the language that the legislature actually enacted, taking away nothing that has been enacted and adding nothing that has not been enacted. ORS 174.010; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993). In this case, the statute says:

"In order to use *any* representation by or on behalf of the insured *in defense of a claim under the policy*, the insurer *must show* that the representations are material and *that the insurer relied on them*." (Emphasis supplied.)

We are not free to ignore that language. If it is not what the legislature intended, then the legislature has made a mistake, and only the legislature may remedy it.

legislature intended the term to mean other than what it ordinarily means in the common law fraud context.

It is apparent, therefore, that the term "reliance," as it is used in ORS 742.208(3), means ordinary reliance, which requires some evidence of a detrimental action or change in position. We turn, then, to the question whether defendant has produced evidence that would support a finding that it relied on plaintiff's misrepresentations.

Defendant's only argument is that "by the very nature of things," insurers rely on an insured's representations in ascertaining the true facts of a loss. Beyond that, defendant offers no evidence that it changed its position in any way, that it offered coverage, that it calculated its risk, or that it incurred additional expenses in conducting its investigation because of plaintiff's misrepresentations. Defendant does not explain, and we do not understand, the significance of the statement that "by the very nature of things," insurers rely on the representations of their insureds. Defendant cites *Fowler v. Phoenix Ins. Co.*, 35 Or 559, 563-64, 57 P 421 (1899), but the case does not aid its argument. In that case, the court construed a policy provision under which a claim could be voided for misrepresentations by the insured. The court held that, under that policy provision,

> "any false swearing touching a material fact or matter of legitimate inquiry under the policy, for the purpose of deceiving and defrauding the company, knowing the same to be false, will render the policy void."

*Id.* at 564. The court certainly did not address what the legislature meant by requiring proof of "reliance" as that term is used in ORS 742.208(3), enacted some 86 years later. Indeed, the court did not even hold that reliance was required under the policy at issue in that case.

We conclude that, to void plaintiff's policy in defense of his claim on the basis of plaintiff's misrepresentations, defendant must establish that it relied on those misrepresentations. Defendant made no such showing in this case. The trial court, therefore, erred in denying plaintiff's motion for a directed verdict against the affirmative defense of misrepresentation.

■ Plaintiff argues that, if the trial court erred in denying defendant's motion for a directed verdict on the defense of misrepresentation, the case must be reversed and remanded. According to plaintiff, because the trial court submitted to the jury both affirmative defenses of misrepresentation and arson, only one of which is supported by any evidence, and the jury returned only a general verdict in favor of defendant, we cannot now tell whether the jury predicated its decision on a legally permissible basis. Accordingly, plaintiff concludes, under the "we can't tell" rule of *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 357, 788 P2d 428 (1990), we must reverse and remand. Defendant offers no argument on that point. Plaintiff is correct.

Reversed and remanded.